UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM E. HARRIS,<br><br>    Plaintiff<br><br>v.<br><br>H. WICKHAM, et al.,<br><br>    Defendants | Case No.: 3:20-cv-00557-MMD-CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 90 |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's motion for partial summary judgment as to his Eighth Amendment failure to protect claim. (ECF Nos. 90, 90-1 to 90-9.) Defendants filed a response. (ECF Nos. 100, 100-1 to 100-5.) Plaintiff filed a reply. (ECF No. 105.)[1]

After a thorough review, it is recommended that Plaintiff's motion for partial summary judgment be denied because there are genuine disputes regarding various material facts.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC). When he filed this action he was proceeding pro se; however, he was subsequently appointed pro bono counsel. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and Article I, Section 6 of the Nevada Constitution. (Amended Complaint, ECF No. 43.) The events giving rise to this

---

[1] Defendants have filed a motion for partial summary judgment as to Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim (ECF No. 91), which the court will address in a separate report and recommendation.

action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*)

Plaintiff alleges that in September 2019, he was housed in Unit 2 at NNCC, with other inmates, including inmate Pamplin. He claims that he sent inmate request forms (known as "kites") to defendants Benjamin Murphy, Sylvia Irvin, and Candice Madieros (mistakenly named by Plaintiff as Medeiros) between September 3 and September 13, 2019, stating that he feared for his safety due to aggressive, homophobic, and threatening behavior Pamplin directed at Plaintiff. He asked to be moved out of Unit 2. Plaintiff alleges his requests went unanswered, and on September 15, 2019, he was brutally assaulted by Pamplin while he was sleeping. Pamplin used his medically-issued cane as a weapon, inflicting multiple lacerations, abrasions and contusions to Plaintiff's head, face, left eye, and body. He claims that Murphy, Irvin, and Madieros violated the Eighth Amendment and Article 1, Section 6 of the Nevada Constitution when they ignored his requests to move out of the unit.

Plaintiff goes on to allege that after the attack defendants Drs. Alley and Naughton failed to promptly get Plaintiff appropriate medical care, and psychologist Gamarra-Hoff failed to promptly get Plaintiff appropriate psychological care, in violation of the Eighth Amendment and Article I, Section 6 of the Nevada Constitution.

Plaintiff moves for partial summary judgment as to the Eighth Amendment failure to protect claim against Murphy, Irvin, and Madieros.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

*v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Eighth Amendment Failure to Protect**

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime

warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

"[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations and quotations omitted); *see also Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir.2015). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id*. at 834 (citing *Rhodes*, 452 U.S. at 347).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834; *see also Labatad v. Corrections Corp. of America*, 714F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)). Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See Farmer*, 511 U.S. at 834; *Labatad*, 714 F.3d at 1160.

First, the deprivation must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834 (citations and quotations omitted). When a plaintiff claims prison officials failed to take reasonable steps to protect, the plaintiff must show that "he is incarcerated under conditions

posing a substantial risk of serious harm." *Id*. (citations omitted). This is a question of fact, and it "must be decided by the jury if there is any room for doubt." *Lemire v. Cal. Dept. of Corr. and Rehab.*, 726 F.3d 1062, 1075-76 (9th Cir. 2013) (citation omitted).

Second, the inmate must satisfy the subjective element. This means that the prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). "Liability may only follow if a prison official 'knows that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it.'" *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at 847).

Thus, prison officials may avoid liability by: (1) proving they were unaware of the risk, or (2) proving they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844-45.

**B. Analysis**

In September 2019, Plaintiff was housed in Unit 2 at NNCC.

Plaintiff presents evidence that he submitted four kites between September 3 and September 13, 2019, advising Murphy (September 3), Irvin (September 6 and 13), and Madieros (September 12) that he feared for his safety as a result of Pamplin's homophobic, aggressive, and threatening behavior directed at Plaintiff, and he requested to be moved from Unit 2. Each kite is signed by an unidentified staff member the same day it was dated. There is no written response to any of these kites. (ECF Nos. 90-2 to 90-5.)

It is undisputed that Plaintiff was attacked by Pamplin on September 15, 2019; that Pamplin used his medically-issued cane as a weapon; and that Plaintiff sustained various injuries as a result of the attack. (ECF No. 90-6.)

Plaintiff also presents evidence that an information was filed in Pamplin's underlying criminal case charging him with murder and child abuse resulting in substantial mental harm based on the assertion that Pamplin stabbed and murdered the victim in front of her young children. (ECF No. 90-1.) He does not provide evidence of Pamplin's conviction, or evidence that Pamplin engaged in acts of violence while incarcerated within NDOC. Defendants, for their part, submit Pamplin's disciplinary history report which shows one instance of fighting many years before this incident with Plaintiff. (ECF No. 100-2.)

In support of their response, Defendants provide declarations from Murphy, Irvin, and Madieros. Madieros was a correctional sergeant at NNCC. Madieros does not recall having any conversation with Plaintiff regarding this issue and does not recall the event, and was not involved in any way. Nor was she aware of any propensity for violence on the part of Pamplin. (Madieros Decl., ECF No. 100-3.)

Murphy was a correctional officer in Plaintiff's unit, which was a dorm setting. Murphy recalls discussing a bed move with Plaintiff around this time, but told Plaintiff he could not authorize a move and Plaintiff would need to talk to his caseworker. According to Murphy, Plaintiff said he was having an issue with another inmate, but he would not give the inmate's name. Murphy claims that he asked Plaintiff if he needed to go into protective segregation, but Plaintiff said he felt safe waiting for a bed move. Murphy also asserts he was not aware of any propensity for violence on the part of inmate Pamplin. (Murphy Decl., ECF No. 100-4.)

7

Irvin was a caseworker in Plaintiff's unit. She does not recall the kites that are submitted in support of Plaintiff's motion. However, if she saw the kites, her procedure would have been to discuss a move with the inmate to determine if it was necessary or was being requested for convenience, the latter of which is not allowed. Irvin questions the authenticity of the kites submitted as evidence by Plaintiff because they are not stamped received, and the signatures are not legible. Without providing any specific information, she states that she is aware of inmates who will manufacture a kite after the fact to support litigation. She was not aware of any propensity for violence on the part of Pamplin. (Irvin Decl., ECF No. 100-5.)

The court finds there is a genuine dispute of material fact as to whether the Defendants knew of and disregarded a substantial risk to Plaintiff's safety. Plaintiff presents evidence that he sent each of these Defendants a kite putting them on notice that Pamplin had acted in a homophobic, aggressive, and threatening manner toward Plaintiff, and that he requested to move out of the unit, to no avail. He was attacked by Pamplin shortly after he sent these kites. Madieros and Irvin state they do not recall the kites, and Irvin goes so far as to question whether Plaintiff actually sent these kites at that time. Murphy contends that he responded reasonably by asking Plaintiff if he wanted to move to protective segregation and instructing Plaintiff to talk with his caseworker about a bed move.

In light of these factual disputes, Plaintiff's motion for partial summary judgment as to the Eighth Amendment failure to protect claim should be denied and this claim should proceed to trial.

///

///

///

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for partial summary judgment as to the Eighth Amendment failure to protect claim (ECF No. 90).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: October 25, 2023

_____
Craig S. Denney
United States Magistrate Judge